May it please the Court, the evidence of record in the applicable law and regulations in this year's council of record corrected a de minimis typographical error. JUSTICE SCALIA You're aware that we can't re-weigh factual findings here, right? COMMERCILLE CAESAR Well, you can't except if the actual record shows that they're incorrect. The government has conceded now in its brief that there was no effect of the change in the order because it was an unofficial internet copy. So the government has now admitted that the essence of the case was an error. JUSTICE SCALIA There was no adverse effect because it was unofficial? COMMERCILLE CAESAR No, that's correct. And it did not affect the penalty in this case, which the government has conceded. The penalty was the same in the settlement agreement. It didn't change. JUSTICE SCALIA Right, but did that make the actual order to assign unofficial to? COMMERCILLE CAESAR No, the actual order, which is in the case file, was official. That was not changed, and that was correct. JUSTICE SCALIA And what went on the internet via the E-FOIA was a PDF copy of that? COMMERCILLE CAESAR It was a copy, that's correct. JUSTICE SCALIA A copy, just with the whole thing, with the signature and everything else. COMMERCILLE CAESAR Yes, but it was inaccurate. JUSTICE SCALIA I'm just trying to get a hold of your argument. Is this on the point that you say that the charge that your client had altered an official document, are you saying it's not an official document? COMMERCILLE CAESAR That's correct. JUSTICE SCALIA That's what you're arguing now? COMMERCILLE CAESAR Yes. JUSTICE SCALIA Okay. COMMERCILLE CAESAR And that's really important. JUSTICE SCALIA And why is it not an official document? COMMERCILLE CAESAR Because the agency has a procedure for scheduling documents, and they never scheduled internet documents as official records. They only scheduled paper documents, and that's consistent with the court's finding in the Chrysler case. JUSTICE SCALIA What's the FOIA regulations say? COMMERCILLE CAESAR The FOIA regulations allow the government to, it's very important, they can exclude information that would affect national security or trade secrets, because these could have an effect. So the internet version does not make any difference. It's the official case file that is what's it. JUSTICE SCALIA Well, the internet version is an exact copy of the official version. COMMERCILLE CAESAR Well, it should be. There's no dispute over that. It wasn't in this case, because in every property. JUSTICE SCALIA That's what goes out to the public so the public can know, right? COMMERCILLE CAESAR Excuse me? JUSTICE SCALIA That's what goes out to the public so the public can look and see, oh, gee, Clevenger Industries stubbed its toe. They got a charge, and then they got the order, and then they had a settlement. We see how the whole thing unrolled, right? COMMERCILLE CAESAR That's correct, but they don't get... JUSTICE SCALIA The actual documents that are in the file, in the paper file, are official documents, right? COMMERCILLE CAESAR Correct. But the public doesn't get the entire record because, again, any matters of national security or trade secrets are sanitized. So the public wouldn't get that. JUSTICE SCALIA Why should the public pay any attention to what's on the website and the e-foil if it isn't official? Why put it out there if it doesn't have some official effect? COMMERCILLE CAESAR Well, it has an effect, obviously, so the public would know what's going on, but in this situation... JUSTICE SCALIA It's important for the public to know what's not official. COMMERCILLE CAESAR I recognize there's a public value here in having the information correct, but the point is it did not cause any serious problems because the penalty didn't change and it didn't affect the company at all. The settlement remained in effect. And when the order was subsequently corrected... JUSTICE SCALIA There was a significant difference in kind in what they were being charged with having done, correct? COMMERCILLE CAESAR Excuse me? JUSTICE SCALIA There was a significant difference in kind in terms of what the party was charged with having done incorrectly. COMMERCILLE CAESAR Well, there was a typographical error in the description of the titanium, and it was stated in pounds rather than the description of the actual titanium. JUSTICE SCALIA How many pounds was it? COMMERCILLE CAESAR How many pounds? Ultimately, it was just over... JUSTICE SCALIA I mean, the mistake in the error. COMMERCILLE CAESAR No, the mistake's at 62.34, I believe, and the pounds, but the corrected amount was... It said it was, that's right, 62.42. I'm sorry. JUSTICE SCALIA Yeah, I know. What were the pounds? COMMERCILLE CAESAR The actual pounds were 1,055 pounds. JUSTICE SCALIA That's a lot of pounds, right? COMMERCILLE CAESAR Excuse me? JUSTICE SCALIA That's a lot of pounds. COMMERCILLE CAESAR Yeah, it is, but the difference in the fine, it didn't matter. JUSTICE SCALIA It certainly conveys a different impression than what somebody was charged with having done, right? COMMERCILLE CAESAR It did, but it didn't affect the penalty. The penalty remained the same because the actual deduction... JUSTICE SCALIA Why does that matter? COMMERCILLE CAESAR Counsel, isn't that beside the point, whether the error had an effect on the penalty or not? I mean, we're here because your client is charged with altering an official document, dealing with alteration and candor and conduct unbecoming and her termination because of that. What I'm looking for is a legal issue that we can decide, not the factual issues. JUSTICE SCALIA Well, so again, that was the argument I made, that it's not an official record. But let's go talk about the cover-up. There can't be a cover-up. In fact, if the person was doing what she thought was the correct procedure, there's nothing to cover up here. She was using her judgment as an experienced attorney and she thought that she could correct the Internet version. But by that time, a blogger had already indicated that there was a problem, so the information was already public. So everybody knew about it. She wasn't covering up anything. In fact, she asked a paralegal to make the change. So this was not in the nature of a cover-up. There wasn't any element of deception here. JUSTICE KENNEDY Whether the action that gave basis to what you referred to as a cover-up, whether that amounts to conduct unbecoming, that's a factual determination, isn't it? JUSTICE SCALIA It is, but the record here, there's a record here of the Inspector General who had investigated the very same misconduct at the request of the agency counsel's office and found that Cesar did not do any of the things that she was alleged to do, did not make any fines or misconduct. JUSTICE KENNEDY Is that really what the IG said? JUSTICE SCALIA That's correct. The IG supported her. JUSTICE KENNEDY What's the exact language you're relying on? JUSTICE SCALIA Well, I could point to you in a number of areas, particularly in the record. JUSTICE KENNEDY And how would that stay in the IG order? JUSTICE SCALIA Well, for example, on page 65. JUSTICE KENNEDY What page of the appendix is this? JUSTICE SCALIA Page 65. For example, on June 5, 2009, the IG states that Mr. Jester, supervisor, ordered Ms. Cesar on June 4 to cease and desist from any dealings on the case and turn the file over to him. All indications are that Cesar fully complied with Jester's instructions. And also, subsequently, it points out that even when Mr. Jester found out the order had been changed, he never approached Ms. Cesar to discuss the matter, that's on page 67, and never advised her how to make the correction, so she used her own best judgment. JUSTICE O'CONNOR I'm sorry, I missed it. Where on 65 does it say that she turned over the email? JUSTICE SCALIA On June 5, 2009, in the middle of that paragraph. JUSTICE O'CONNOR Further, he ordered Cesar on June 4 to cease and desist with dealings on the case and turn the file over to him. All indications are she fully complied. I understand that the government isn't disputing, and nor did the Board find that she didn't turn the file over, as I understand it, they found that the file didn't contain the email, which he had expressly requested. I don't think that there appears to be an instance where they disregarded a particular finding of the IG. I think this finding goes to the file, and they're not disputing the file. JUSTICE SCALIA Also, the IG did not find any cover-up, and they didn't find that Ms. Cesar had committed any wrongdoing. That's very significant because they didn't find that she did any wrongdoing. Where is that in this IG report? JUSTICE SCALIA Well, for example, at the end on page A70, they basically indicated that it appeared to be a matter that should be resolved as a performance issue as opposed to misconduct. JUSTICE O'CONNOR Where does it say that? JUSTICE SCALIA Well, at the very last paragraph, for example, noncompliance with protocol that resulted from inadvertent error or professional negligence if it affected the operation or reputation of the office is a matter to be determined and settled administratively. But there was never an indication that she did anything, that she committed any wrongdoing. JUSTICE O'CONNOR But it doesn't say she didn't. I mean, you can't read this IG report as somehow vindicating Ms. Cesar. It says the issues in this case appear to be compliance by Cesar with the appropriate protocols in the office relating to the correction of inadvertent errors appearing in settlement documents. Government has no, as far as I can tell, dispute with that sentence. They never alleged that the error was advertent. It's the correction of the error that's been the problem. And then the next, the concluding sentence is noncompliance with protocol that resulted from inadvertent error or professional negligence if it affected the operation or reputation of the office is a matter to be properly determined and settled administratively by the department. And isn't that exactly what happened here? They decided administratively that she had made a mistake, and it was a mistake that needed to be prosecuted. That's what happened, but there was no, and the IG pointed out, there was no procedure at the time for correcting any administrative errors. Wasn't there some testimony that although there wasn't a chapter and book procedure, it was generally understood in the office that the person that makes the correction is the official that's responsible for signing it? I thought there was testimony to that fact, which is not helpful to your case. Right, there was. On the other hand, there was also, after the fact, they changed the procedures to make it more explicit how to go about correcting errors, which wasn't true at the time. So, and that's also what the IG pointed out. And after, even when this whole thing was found out that there was an error that was corrected, nobody ever contacted Ms. Caesar to find out her version of what happened. They just went ahead and continued to take the disciplinary action. And what's wrong with this case is that both the administrative judge and the board totally discounted the IG report. They gave it almost no weight whatsoever. Counsel, you keep referring to the IG report as somewhat exonerating your client. And I just don't see that. I see the IG report as addressing issues within the purview of the office of the IG and goes on and says these other issues are up to the agency to resolve. And I think it's overstating or maybe even misstating the conclusion that the IG achieved. Well, it should be given certainly some weight. But there's no weight of exoneration in the IG report. Well, there are factual findings that should have been considered here. It was the agency that requested the IG report, and then they ignored it. On the other hand, they did charge Ms. Caesar with not- Do you have a case that says that the agency was required to pay any attention at all to the IG report? I can't cite a case that says it should, but I can't find a case that says it shouldn't. You'd like this to be the case, I think. But the IG reports are made for many reasons. Right, but this was specifically done for the purpose of investigating whether Ms. Caesar engaged in misconduct in the alteration of a government document. So it was right on point. This investigation was exactly dealing with the issues in this case. But the issues that led to the termination of your client, conduct unbecoming, the lack of candor, those issues, those were achieved by the department, not by the IG. That's correct. They didn't specifically investigate those, but the underlying facts were on the basis for those charges. So the IG looked into all of the underlying facts in the case and did not find any wrongdoing by Ms. Caesar. Did the citing official indicate that the removal action would have been taken on the basis of any one of the three charges? The citing official said any one of the first three charges, but not charge four. And the administrative judge found that removal was not warranted for charge one, the alteration of an official government document. So charges two and three are, just remind me what they are. A lack of candor and a failure to comply, follow direct order. So conduct unbecoming is one that was not. Is charge four. Charge four. So there was. You're using up your rebuttal time now. Do you want to save it? Yes, please. I'll restore a full two minutes for rebuttal. Thank you. Thank you. Ms. Vandeman. May it please the court. There were four charges in this case, and the case is a fact-bound case. The IG did not exonerate Ms. Caesar. The IG explored only the issue of whether she had altered the order. The IG report came out in October. If this was truly a typo, meaning literally the word titanium had been spelled wrong, and so she went in and corrected it or asked the paralegal to correct it, would that violate the agency's requirements of the secretary signing each document? Yes, Your Honor, because what happened here is that when she altered the order and the documents on the web, on the E-FOIA website were not the same as the official hard copy, no one except the assistant secretary had authority to change that final order. It would have been a two-page order, and page two had not had the numeral two on it. It had been clearly a second page, but there hadn't been a numeral two. If Ms. Caesar had put a two on the E thing, that would be the same problem. She would be facing the same problem. It could be, Your Honor. What happened here was that she altered the order. So didn't you really answer, should be, I would hope it wouldn't be? Can you imagine the small-mindedness of a government that's going to fire somebody because they put page two on a document because it didn't previously have a page number on it? What distressed the assistant secretary and Ms. Caesar's supervisors was that the order on the website was not the same as the one that was signed, and she didn't tell them about it. Isn't it the order wasn't the same as a matter of substance? The substance didn't change the outcome, but it was substantively different. It was substantively different. I have two points, Your Honor. It was substantively different because the change she made was to the quantity of titanium and the type, which made it clear that it was export-controlled. It was not a simple typo. I would have thought your answer would have been where the government gets upset when there's a change in substance, so the public is confused about what the agency was actually doing and what they thought was going on, but adding a page number, it hardly falls into that category. Yes, well, and here Ms. Lamb, the deciding official, testified that what Ms. Caesar did was, in altering it and not telling her supervisor or the client, the director of export enforcement, or the assistant secretary, none of them knew that what was on the website was different than what was signed. Is this a case where you sort of justify the outcome because the cover-up was worse than the crime? You know, maybe if she had only changed the number from one to two on the bottom and been forthright about it, we would probably not be here at all. Even if you would still say technically it was altering an official document, nobody would have put up any kind of resistance to the government or tried to fire her as a result of it because that would have been a small issue, but here the cover-up was worse than the crime and that's what caused them to reach the conclusion. Is that part of what I understand you'd be arguing? Part of it, Your Honor. The deciding official testified that all four charges were serious. She would have removed Ms. Caesar based on any one of the four charges and any one of the specifications within charges two and four. But the most serious charge was the... I didn't have the standard to say all four would justify removal, wasn't it? She did. She testified that... The deciding official. The deciding official, Ms. Lamb. Do we have that in the records? Yes, her testimony... I'm probably misremembering it, but I thought that she said one through three would be independently sufficient. No, she said all four, Your Honor, and actually the full board sustained all four. While the administrative judge did not sustain the penalty of removal for charge one, the full board did. They modified the administrative judge's decision because all four charges were serious. But getting back to your point, the cover-up and the manner in which she did it were very, very serious for a senior-level attorney. She was not fully forthcoming with her supervisor, the client, or the assistant secretary. Had she said in the beginning there was an error made, I don't know how it happened, but made a recommendation right away on how to fix it and went to her supervisor and said, here's what happened, what do we do, this all could have been avoided. I do also want to point out that the IG didn't... Well, if the document hadn't been altered, there wouldn't have been any basis for... If it hadn't been altered for the other three charges. Because all the conduct flowed out of the fact that there had been a change. That's correct, Your Honor. There had been a change, the boss gets upset about it, give me everything that happened, I want you to tell me everything that happened. Well, that's a failure to follow the orders because people say you didn't give me everything. And, well, you weren't candid with me while you were trying to tell me what happened. And, furthermore, you called me a bunch of names. And bosses don't like to be called names, right? Well, and in this case, she had been disciplined before for similar types of conduct, conduct unbecoming. She'd had a 14-day suspension in 2007 and a one-day suspension in 2006. Her other supervisors had attempted to correct her lack of civility and rude and hostile behavior towards supervisors. Well, those previous events go to the penalty, whether the penalty was reasonable. And I don't understand Cesar to be arguing that if we sustain the charges, the penalty was unreasonable. She did ask for a remand on charges three and four. Right, but I mean in front of us, in front of us. So I don't think we need to belabor any previous conduct problems she may have had. That doesn't go to the merits of whether it happened here. That's correct. Getting back to the IG report, though, the IG issued a three-page letter to counsel in October. And one month later, the proposing official then proposed charges two, three, and four. So there's no way that the IG report can be read as addressing charges two, three, and four. Charges two, three, and four did involve the cover-up and the manner in which she conducted it. It was, for example, Mr. Jess testified that he was confused. He couldn't figure out why the documents on the website were not the same as the ones that were signed. So he asked her to please explain what happened, who, why, when. And instead, then he wanted all the e-mails. She only gave him the internal e-mails. It was four or five days later when finally he realized he wasn't getting any answers from her that he had to go to company counsel to ask for the e-mails. And the May 8th e-mail surfaced. So all this time, you know, she knew what had happened. She did not tell her supervisor. She did not tell the Director Madigan. She did not tell the Assistant Secretary. Jess was confused and trying to figure out how to fix this. And in the process, while she argues that the IG said it appeared she followed the cease and desist order, that was irrelevant to the charge. The proposing and deciding officials did not rely on that at all. The cease and desist order was Mr. Jess telling her, okay, you're not handling this company matter anymore. And it appeared to the IG at the time that she complied with that, although it turns out she did go to see Mr. Madigan, the Director, a day after Mr. Jess had told her that. So in the disciplinary action under Chapter 75, Title V, which is totally separate from an IG proceeding, she did not follow Mr. Jess' order. She did not give him the e-mails, even when he told her the ones she gave him were not responsive. She did not cease and desist because she went to Director Madigan the day after he told her to stop having any involvement in the case. And with respect to the conduct becoming, even the administrative judge noted in the decision that throughout the MSPB hearing, she continued to refer to Mr. Jess in a derogatory manner. It showed an utter lack of civility, contempt, and disdain for him and for his position and for any kind of authority within the office. So that, yes, the cover-up in Charges 2, 3, and 4 were very, very serious, and as the deciding official testified, the lack of candor was the most serious of all the serious charges because an attorney in the government, especially an experienced one, the client, the agency, has to be able to trust and rely upon what it is the attorney is telling them. Is that typically the basis for the conduct for the lack of candor? There were, I believe, four specifications. She, in talking with Mr. Jess, never told him that she had altered the order and had it put on the website. In talking with Mr. Madigan, she went to see him, the Director of Export Enforcement, and said, oh, there was a typo, we're in the process of having it corrected, but she had already caused the changed order to be put on the website two days prior to that time. She had already sent the altered order to counsel for the company and to the web, so she was telling Mr. Madigan that we're in the process of having it corrected, but she'd already done it, and he didn't know. The actual order was wrong, too, right? The order was wrong in the... When she said she was in the process of correcting all this, could that have meant she's in the process not only of having already done something to the website, but trying to get the document that's in the record corrected? There's no evidence whatsoever that she ever attempted to have the original hard copy document amended. Did it ever get corrected? It did. About a month later, they went through the formal process of reissuing the documents, and the assistant secretary signed an amended order, captioned an amended order. Was it backdated? No, with a new July date. Well, then did they put that on the E-FOIA? The record doesn't say, but I imagine they... Yeah, I mean, the thing that's on E-FOIA is false, right? If they didn't put it up, didn't correct it. I'm sure that they... It's not on the record, but by regulation, the agency is required to put it on E-FOIA. And what the full board said was any experienced attorney knows or should know that you go, even though there was no formal written protocol, which is what the administrative judge relied on, any experienced attorney should know what you have to do to get the assistant secretary to sign the correct document. Sort of a don't ever do anything on your own initiative. No, I think with the initiative she should have taken. I'm certain that the government operates inefficiently. If you know something is wrong and you can fix it, don't ever do it because you're going to get fired. No, Your Honor, if she had gone to Mr. Jess right away and said, I don't know how these documents got put on the website. Here's what I recommend in terms of what we do to fix it. Instead, actually, what she told the IG was, well, it would be a waste of time to go through this process to kind of amend the order. But what the assistant secretary said in his declaration was, I signed a lot of documents and I've completely lost trust and confidence in Ms. Caesar because if somebody asks me a year from now, is this a document you signed, and if somebody has substituted a page without him knowing it, it completely undermines his authority and the regulatory scheme. Getting to that, the penalty imposed upon the company had actually nothing to do with the proposing and deciding official's decision. They didn't mention it. They didn't rely on it. It's really irrelevant. I'm still confused about one thing, Ms. Hanneman, and maybe I misunderstood what you said, so I want to make sure I get it right. We talked about what the deciding official held with regard to one through four, the AJ and then the board, and I think that we all agree that the AJ held that number one alone would not be sufficient for removal, but one in conjunction with any of two, three, or four would be enough. Is that right? No, the AJ actually held that one alone did not justify removal. The full board modified that. That's where I want to know. I'm looking at the full board opinion, and I've just read the entire thing through for, I think, the third time now while we sit here, and I don't see, you told me the full board took this to modify it to make it clear that number one alone would be enough, and I don't know how I could miss that in the board opinion, so I want you to show me where that is. The full board's decision is a little... One through 13 in the record, so A1 through 13. I'd like to know where. And in the back of the blue brief. And in the back of the blue brief, but yes, A1 through 13 in the record. So where did they modify it and say altering the official document alone would have been enough for the dismissal? Because the AJ clearly held that wasn't enough. Right. Where did they modify it? The full board didn't say it that way. What the full board did was go through each of the charges and say that, for example, on page four of actually the board's decision, that they went through... You said that each charge could individually be affirmed. I certainly agree with you, but you represented... I mean, this is a case about candor, Ms. Fanneman, so you represented to this court that the board took this case and expressly modified the AJ's determination that number one standing alone would not have justified the penalty of removal. You expressly said that twice in oral argument now, so I want to know where the board's opinion expressly changed the AJ's conclusion that number one alone, even if proven, doesn't justify the penalty of removal. The full board on pages 12 and 13 of its decision under the penalty section... Yes. ...went through where all the charges and specifications are sustained. It's going to review the penalty, only to determine whether the agency considered the relevant factors doubtless. And it's only going to modify a penalty if the agency failed to consider it. Well, I'm looking at page 12 and 13 on penalty, right? And I'm looking for some place where the board is saying, unlike the ALJ, we believe that the penalty could have been imposed based on charge 101. I don't see that. No, what the board said was on the last page... Well, which line? It's on page 13? Page 13. The final paragraph basically accepts as modified by the final order. So what the board was doing was modifying the order on the penalty because further up on this page it says, she engaged in all these types of misconduct, meaning charges two, three, and four, in addition to... Where are you reading from? I'm sorry. What line are you talking about now on page 13? I'm sorry, I'm looking at page 13 of the... Of the decision. Of the decision. Yeah, me too. And so I saw the last line except as modified, the boilerplate. Right. Now, where up above was there some modification? Well, on the end of that paragraph that ran over to the top of the page... Uh-huh. Furthermore, repeat that. The board said, no, the appellant engaged in all these types of misconduct, and earlier it had discussed charges two, three, and four. It did not discuss charge one. Right. But then it said, in addition to altering official documents... But that's simply confirming what she did with charge one. Well, and the way it... We read it with the board modifying the administrative judge's decision. The only way the board modified it could have been with respect to charge one because the A.J. did not sustain... So you think the boilerplate language that they use in every case, saying except as modified, it's confirmed. The words, the language they used to describe why they thought charges one, two, three, and four were sustained was not verbatim the same language that the A.L.J. used. So if you take the whole section here on charge one and you go back and you read it as charge one in the A.L.J., it's not copied. It's altered. It's true. The board... The alterations that they made is in the words of the English language they used to reach the same conclusion as the A.L.J. But there certainly is no... I mean, if someone in law school asked you, Ms. Manum, please point out to me where the full board indicated that it disagreed with the A.L.J. on the question of whether or not charge one alone would sustain the penalty. You would then point simply to the except as modified language. And the board does not put that in as boilerplate at the end of every decision. So the board puts it in when it's actually modifying. Okay, so I just want to be clear. So the government's position now, which I am to apply in every future case, is that when the language except as modified by this final order appears in every single board opinion henceforth, it is a modification of the determination of the A.L.J. I have to conclude that that sentence alone always amounts to a modification in all future cases of whatever decision the A.L.J. reached, even if no expressed language anywhere in the opinion indicates that I am to invent one modification and insert it, assuming that the A.L.J. that that's the particular one that the A.L.J. got wrong. That's the position of the government before me today, is that I am to take that language in every future case and give it meaning. Your Honor, we are not suggesting that the court invent anything, but in this case, reading the fact that the board modified the A.L.J.'s decision, which the board doesn't do if it's simply denying the petition for review, together with the board's discussion of- I'm telling you, they put this in. I've talked with the chairman about this and what the problems are for putting that language in. She told me she would do something about it. I obviously haven't. The notion that what the presiding judge is saying is the position you're taking is that when they use this magic language, it means that any substantive difference between the A.L.J.'s decision, right, and what you saw in the paper here, the sub silentio, the full board is disagreeing, but without saying so. Well, Your Honor, and here we- And that's borderline preposterous. Well, and it gives me the discretion to choose upon which ground I think the full board is now disagreeing with the A.L.J., because you can point to nothing at all in this opinion that justifies the statement you made to the court, that the board is concluding that claim one alone, or count one, would have justified independently her removal. Your Honor, the language that we quoted, that she engaged in all these types of misconduct, in addition to altering official documents, is in the penalty section of the board's decision, and the way we read it is that with modifying the A.J.'s decision, not only substantively, but under the penalty analysis- Well, sure. The reason why they do that is because if the full board had concluded that the A.L.J. had been wrong on charge one, okay, then you would have a problem trying to dial your penalty, wouldn't you? Because we know that the agency would not have removed her from one, and we know that the agency wouldn't have removed her from four. No, no, Your Honor. The deciding official testified that she would have removed Ms. Caesar based on any one of the four charges, standing alone, and any one of the specifications under charges two and four. So Ms. Lamb-Hale's testimony in her decision was clear on that, and in her testimony on each one of the charges standing alone was sufficient to remove. And under the court's standard of review, in terms of deference to the agency in terms of penalty, the deciding official's testimony is quite powerful here. She never testified, well, I would not have removed on charge one. She didn't testify I would not have removed on charge four. She testified that each one of the charges standing alone was sufficient to remove Ms. Caesar. Thank you. The government is incorrect when it says that the deciding official would have removed on any one of the four charges. In fact, in the decision on page A346 in the last paragraph, the deciding official states unequivocally that any of the reasons one, two, or three standing alone require removal. It does not discuss charge four standing alone would require removal. So the government is incorrect on that. Charge four standing alone would not warrant removal. In addition, in the board's final decision, it particularly ties lack of candor as being important when it's involved with other misconduct. And here we have already the administrative judge finding that charge one wouldn't stand alone, and we believe that Ms. Caesar was not guilty of misconduct when she made a change on an unofficial Internet version of a document. She used her best judgment. If her judgment was incorrect, it was certainly not misconduct. It was at most a performance issue. And furthermore, she told her supervisor that she had contact with company counsel and agreed that a supervisor could contact him. This is hardly the conduct of someone who was trying to cover up something. She didn't realize at the time she spoke to him that the change had already been made, but she told the paralegal to make the change because she didn't have access to the system herself. But she didn't realize the paralegal had made the change because she told her to make it by fax, and she did it by e-mail. And the client and the paralegal sent her an e-mail, and she missed it. Didn't she call the webmaster and ask the webmaster and arrange with the webmaster to make the change? Well, she told the paralegal, and the paralegal had the webmaster make the change. But Ms. Caesar just didn't realize. No, Ms. Caesar contacted the webmaster. The paralegal did. Ms. Caesar didn't realize the change had been made. So when she told the supervisor that it was in the process of being made, she didn't realize it was being made. But that's hardly not evidence of a cover-up. It just shows that she was incorrect. The bottom line is it doesn't promote the efficiency of the service to remove an experienced attorney for correcting an unofficial version of a document on the Internet. Thank you. Thank you, Mr. Passman. The case is taken under submission.